IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL CASE NO. 3:09-CR-00039-1 |
| v. | MEMORANDUM OPINION AND ORDER |
| WILLIAM CURTIS HOPE. | JUDGE NORMAN K. MOON |

Defendant pleaded guilty, without benefit of a plea agreement, to a five-count superseding information, and on May 17, 2010, I sentenced Defendant to 24 months as to count 1 and 6 months as to each of the remaining counts, all to run concurrently. Prior to sentencing, the government filed a motion for upward variance, objecting to the presentence report ("PSR") on the ground that the advisory guideline range resulting from applying the guideline section that the United States Probation Office ("USPO") found most appropriate was insufficient to appropriately punish the conduct in this case.[1] Defendant's response to the motion for upward variance included a motion to dismiss count one of the superseding information.[2]

At the sentencing hearing, I imposed a sentence above the advisory guideline range;[3] I also denied Defendant's motion to dismiss count one of the superseding information. This Memorandum Opinion and Order sets forth my reasons for denying the motion to dismiss.

---

[1] For purposes of guideline calculations, the PSR prepared by the USPO used U.S.S.G. § 2A2.4, Obstructing or Impeding Officers, as the most analogous guideline applicable to Count One.

[2] Federal Rule of Criminal Procedure 12(b)(3)(B) provides that, "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense."

[3] The facts justifying a sentence outside the advisory guidelines are set forth in the Statement of Reasons attachment to the judgment imposed on May 17, 2010, and entered on the docket on May 28, 2010.

Defendant's conduct on the Blue Ridge Parkway[4] on October 11, 2009, led to a five-count superseding indictment charging Defendant with the following offenses: Count One, eluding a police officer in violation of Virginia Code § 46.2-817(B),[5] a Class 6 felony punishable by up to five years in prison; Count Two, driving on a revoked license in violation of Virginia Code § 46.2-301 and 36 C.F.R. 4.2; Count Three, hit and run (property damage) in violation of Virginia Code § 46.2-896 and 36 C.F.R. § 4.2; Count Four, driving under the influence in violation of 36 C.F.R. § 4.23(a)(1); and Count Five, speeding in violation of 36 C.F.R. § 4.21(c). Count One was prosecuted under the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13. The other charges are petty offense violations of the Code of Federal Regulations.

The ACA serves "to fill gaps in the federal criminal law that applies on federal enclaves," *Lewis v. United States*, 523 U.S. 155, 160 (1998), and may be invoked by the government to prosecute an offense under state law "only when there is no enactment of Congress that punishes the offender," *United States v. Fox*, 60 F.3d 181, 183 (4th Cir. 1995) (citing *Williams v. United States*, 327 U.S. 711, 718-19 (1946)). *See also United States v. Yates*,

---

[4] The Blue Ridge Parkway passes through the George Washington and Thomas Jefferson National Forests, and is administered by the National Park Service, pursuant to 16 U.S.C. § 460a-2. Driving on a revoked license, and after first committing a hit-and-run property offense with the vehicle he was driving, Defendant led authorities on a high-speed chase for 15 miles on the Parkway, forcing other vehicles off the road. Defendant continued to elude after driving off the road, hitting a tree, and blowing a tire. Defendant was finally apprehended when his vehicle was rammed by the officer chasing him, as Defendant attempted to bypass spike strips being laid on the road. Defendant was intoxicated on alcohol, he had amphetamines in his system, and authorities recovered syringes Defendant had disposed of during the pursuit.

[5] This statute provides, in relevant part:

Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony. It shall be an affirmative defense to a charge of a violation of this subsection if the defendant shows he reasonably believed he was being pursued by a person other than a law-enforcement officer.

211 Fed. Appx. 925 (11th Cir. 2006) ("Every court to have decided the issue has concluded that federal regulations are 'enactment[s] of Congress' within the meaning of the Act."). The ACA "will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior." *Lewis*, 523 U.S. at 165.

Defendant moved to dismiss Count 1 of the superseding information on the ground that acts of Congress preclude application of the ACA to prosecute Defendant under the Virginia eluding statute. Defendant contended that, because the eluding statute is found in Title 46.2 of the Code of Virginia, "Motor Vehicles," not Title 18.2, "Crimes and Offenses Generally," then the eluding statute should be classified within the category of "traffic and the use of vehicles within a park area," pursuant to 36 C.F.R. § 4.2[6]; in Defendant's view, the Virginia eluding statute was adopted as part of the Code of Federal Regulations, which are enactments of Congress, and under 26 C.F.R. § 1.3, a violation of 36 C.F.R. § 4.2 is a petty offense, punishable by imprisonment of no more than 6 months and a fine.

Congress intended to "confine the scope of the words 'any enactment' more narrowly than (and hence extend the Acts' reach beyond what) a literal reading might suggest." *Lewis*, 523 U.S. at 161; *see also United States v. Terry*, 131 F.3d 138 (4th Cir. 1997) (Table) ("This court has held that the use of the ACA is proper even when the conduct violates both state and federal law, so long as the precise act prohibited by state statute is not specifically prohibited by

---

[6] The language found in 36 C.F.R § 4.2 describes the scope of the regulation as it applies to motor vehicles as follows:

(a) Unless specifically addressed by regulations in this chapter, traffic and the use of vehicles within a park area are governed by State law. State law that is now or may later be in effect is adopted and made apart of the regulations in this part.

(b) Violation of a provision of State law is prohibited.

federal law.")(citation omitted); *United States v. Keys*, 599 F.3d 469, 477 (5th Cir. 2010)("the fact that conduct could be charged under some federal statute does not necessarily prevent assimilation of a state offense") (citing *Lewis*, 523 U.S. at 159- 60). The "primary question" is whether "applicable federal law indicate[s] an intent to punish conduct such as the defendant's to the exclusion of the particular state statute at issue." *Lewis*, 523 U.S. at 166. Here, applicable federal law was not intended to punish Defendant's conduct to the exclusion of the Virginia felony eluding statute, and the precise act prohibited by Virginia's eluding statute is not specifically prohibited by federal law.

In *Fox*, *supra*, 60 F.3d 181, the defendant challenged the applicability of the ACA to his conviction for driving in violation of a court order after he had been adjudged an habitual offender. Like Hope, Fox argued that application of the ACA was precluded by 36 C.F.R. § 4.2 because § 4.2 is an enactment of Congress and the act of driving a motor vehicle is essential to violating the act at issue in Fox. *Id*. at 184. However, the United States Court of Appeals for the Fourth Circuit found that, rather that being a glorified charge of driving on a suspended license, as Fox had claimed, the gravamen of Fox's violation was defiance of an order declaring him to be a danger to others using the highway and prohibiting him from driving. *Id*. at 185.

Likewise, Defendant's crime was prohibited under Title 46.2, and can similarly be distinguished from crimes otherwise falling under the reach of 36 C.F.R. § 4.2. The crime of eluding is not like most other "traffic" offenses. Rather, it is the defiance of an order by the police to stop ("willful and wanton disregard of such signal") and the resulting interference with or endangerment of the operation of the law enforcement vehicle or endangerment of a person. "[A] manifest purpose of the statute is to protect the public against a driver eluding police 'so as to . . . endanger a person.'" *Estrada v. Commonwealth*, 2003 WL 21448587, *2 (Va. App. 2003)

(unpublished). While the conduct proscribed – like the conduct proscribed by the offense in *Fox* – requires one to drive a motor vehicle, the gravamen of the offense is disobeying an order to stop, combined with interference or endangerment.[7] Although Defendant asserts that "the gist of the offense is the operation of a motor vehicle within the jurisdiction of the National Park Service," the charges at issue both in the instant case and in *Fox* involve obstructive conduct at their core.

While regulations pertaining to traffic and the use of motor vehicles on the Parkway are contained in Title 36 of the Code of Federal Regulations, and carry the force of law, there is no provision of federal law proscribing the conduct charged in Count 1 of the superseding information. This "gap" between federal and state law is precisely the deficit the ACA was enacted to address.[8] As a result, under the first prong of the *Lewis* analysis – whether the defendant's act or omission was made punishable by any enactment of Congress, *see Lewis*, 523 U.S. at 164 (citing 18 U.S.C. § 13(a)) – the felony eluding statute contained in Virginia Code § 42.6-817(B) was properly charged under the ACA. The fact that the Virginia felony eluding statute is found in Title 46.2 of the Code of Virginia, "Motor Vehicles," not Title 18.2, "Crimes and Offenses Generally," is irrelevant. Indeed, the offense conduct prohibited by the Virginia

---

[7] Indeed, eluding charges have been categorized as crimes of violence, thus distinguishing even further an eluding charge from the traffic offenses encompassed by 36 C.F.R. § 4.2. *See, e.g., United States v. Owens*, 359 Fed. Appx. 436 (4th Cir. 2010)(affirming enhancement under 2K2.1 based on a North Carolina conviction for speeding to elude).

[8] As observed in *United States v. Statler*, 121 F. Supp. 2d 925 (E.D. Va. 2000), "the ACA promotes the evenhanded application of state law to local conduct that the federal law does not punish and, but for the situs being a federal enclave, would qualify as a local offense." *Id*. at 926 (citation and internal quotations omitted). *Statler* further remarked on *Lewis*, which instructs that "a substantial difference" in the conduct proscribed by a state statute and the federal law would "ordinarily indicate a gap for a state statute fo fill." *Statler*, 121 F. Supp. 2d at 927 (citation and internal quotations omitted). Because the conduct engaged in by the defendant is "qualitatively . . . different" from the conduct adopted by the federal regulations, *id*. at 928, the Virginia eluding statute fills a gap and is therefore appropriately assimilated.

statute in *Fox* was prohibited under Title 46.2 but was found to be properly assimilated.[9]

For the heretofore stated reasons, and as stated on the record at the sentencing hearing of May 17, 2010, Defendant's motion to dismiss was DENIED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and Order to all counsel of record. Given that Defendant has filed a notice of appeal, which has been transmitted to the United States Court of Appeals for the Fourth Circuit, the Clerk is further directed to supplement the record on appeal with this Memorandum Opinion and Order.

It is so ORDERED.

ENTERED this 10th day of June, 2010.

*signature*

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE

---

[9] The Fourth Circuit recently affirmed a conviction for a similar crime on the Blue Ridge Parkway in North Carolina (the North Carolina crime of aggravated speeding to elude arrest), although there was no challenge therein to the applicability of the ACA to the charge itself. *See United States v. Peebles*, 2010 WL 1006721 (4th Cir. March 19, 2010) (unpublished). In *Peebles*, the Fourth Circuit reviewed a case involving factual circumstances similar to the instant case. Peebles led police on a high-speed chase on the Blue Ridge Parkway, fleeing for about twenty-five miles while narrowly missing head on collisions, and pleaded guilty to the offense of aggravated speeding to elude arrest under N.C. Gen. Stat. § 20- 141.5. The issue on appeal challenged the sentence the court imposed; Peebles did not challenge the applicability of the ACA. However, the dissent observed that, "there is no federal law of aggravated speeding to elude arrest, and the district court correctly assimilated that North Carolina crime." *Peebles* at *5. Hope's similar crime was likewise properly assimilated.